UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT


MARIA JOANNA PIMENTEL         :
                              :              PRISONER
        v.                    :    Case No. 3:04CV821 (JBA)
                              :
KUMA DEBOO, et al.[1]          :


RULING ON DEFENDANTS' MOTION TO DISMISS

Plaintiff Maria Joanna Pimentel ("Pimentel") is currently confined at the Federal Correctional Facility in Danbury, Connecticut ("FCI Danbury").  She brings this civil rights action pro se pursuant to 28 U.S.C. § 1915.  Pimentel asserts a claim she styles as "medical negligence."  Defendants have moved to dismiss this case on various grounds.  For the reasons that follow, defendants' motion is granted in part and denied in part.

I.    Standard of Review

When considering a Rule 12(b)(6) motion to dismiss, the court accepts as true all factual allegations in the complaint and draws inferences from these allegations in the light most favorable to the plaintiff.  See Scheuer v. Rhodes, 416 U.S. 232,

_____

[1]The named defendants in the amended complaint are the Bureau of Prisons; Warden Kuma Deboo; Danbury Correctional Facility; Ms. Rivers; Ms. Johnson; and Ms. Santini.

236 (1974); <u>Flores v. Southern Peru Copper Corp.</u>, 343 F.3d 140, 143 (2d Cir. 2003).  Dismissal is inappropriate unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  <u>See</u> <u>Davis v. Monroe County Bd. of Educ.</u>, 526 U.S. 629, 654 (1999); <u>Sweet v. Sheahan</u>, 235 F.3d 80, 83 (2d Cir. 2000).  "'[T]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" <u>York v. Association of Bar of City of N.Y.</u>, 286 F.3d 122, 125 (2d Cir.) (quoting <u>Scheuer</u>, 416 U.S. at 236), <u>cert. denied</u>, 537 U.S. 1089 (2002).  In other words, "'the office of a motion to dismiss is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'"  <u>Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.</u>, 375 F.3d 168, 176 (2d Cir. 2004) (quoting <u>Geisler v. Petrocelli</u>, 616 F.2d 636, 639 (2d Cir. 1980)).  However, "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss" from being granted.  <u>Smith v. Local 819 I.B.T. Pension Plan</u>, 291 F.3d 236, 240 (2d Cir. 2002) (internal quotation marks and citation omitted).

Additionally, a "case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district

court lacks the statutory or constitutional power to adjudicate it." <u>Makarova v. United States</u>, 201 F.3d 110, 113 (2d Cir. 2000).  In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the court may refer to evidence outside the pleadings.  <u>Id.</u>  Evidence concerning the court's jurisdiction "may be presented by affidavit or otherwise." <u>Kamen v. American Tel. & Tel. Co.</u>, 791 F.2d 1006, 1011 (2d Cir. 1986).  A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists. <u>Makarova</u>, 201 F.3d at 113; <u>see also</u> <u>Malik v. Meissner</u>, 82 F.3d 560, 562 (2d Cir. 1996) ("The burden of proving jurisdiction is on the party asserting it.").

II. <u>Facts</u>

The court accepts as true the following allegations taken from the amended complaint and attached exhibits.

Since her incarceration in December 1999, Pimentel has had a history of uncontrolled hypertension and obesity.  Prior to this incident, she was evaluated in the chronic care clinic every three months and was on a treatment program that included oral medication for high blood pressure and education on the complications of high blood pressure, smoking cessation, weight reduction, diet and exercise.  On March 24, 2003, the Clinical Director evaluated Pimentel for hypertension and degenerative

joint disease.  At that time, her blood pressure was 150/100, pulse 80 and weight 248 pounds.  The physician adjusted her medication and encouraged her to lose weight, stop smoking and start an exercise program.

On May 10, 2003, while she was taking a shower, Pimentel experienced a sharp pain in her head.  The pain stopped when she got out of the shower and returned to her room to dress. Pimentel then went outside and sat on a bench.  About fifteen minutes later, the pain started again.  Pimentel called her roommate who called a correctional officer.  They took Pimentel to see a doctor.  At that time, Pimentel was experiencing pain on the left side of her head and the right side of her body was numb and shaking.  The doctor told Pimentel that if she did not calm down and take it easy she would have a stroke.  The doctor recommended relaxation and bed rest and instructed the correctional officer to have Pimentel return to the medical department at 1:00 p.m.

That afternoon, he told Pimentel to stay relaxed and report to sick call on Monday.  That evening, Pimentel experienced the same symptoms.  A correctional officer took Pimentel to see defendant Johnson.  Defendant Johnson told Pimentel that, other than being overweight, there was nothing wrong with her and sent her back to the housing unit.

4

On Monday, May 12, 2003, Pimentel reported for sick call. Pimentel told defendant Santini that she was slurring her words and was unable to hold things in her right hand.  Defendant Santini said that there was nothing wrong with Pimentel; it was probably nerves.  She told Pimentel that she needed to lose weight, made an appointment for her for May 16, 2003, and sent her back to work.

When Pimentel was at work the following day, she told her supervisor that she still was having symptoms.  He called the medical department.  Defendant Santini again stated that she found nothing wrong with Pimentel even though Pimentel's face was discolored and she had difficulty grasping things.

On the evening of May 14, 2003, Pimentel had a severe headache and felt confused when she tried to read.  When she woke on May 15, 2003, she was unable to speak.  Although her eyes were open, she was unable to comprehend anything her roommate said to her.  Pimentel was unable to dress herself and was "off-balance" when she tried to walk.  Pimentel's roommate noticed that Pimentel's mouth was crooked and that she had spilled water on herself when she tried to drink.  Pimentel's roommate and another inmate ran to the medical department and summoned help.

Emergency medical assistance was summoned and Pimentel was taken by ambulance to the local hospital.  Pimentel suffered a

cerebral vascular accident of the middle cerebral artery.
Pimentel was transferred to the Federal Medical Center in
Carswell, Texas ("FMC Carswell") for evaluation and
rehabilitation.   Pimentel states that she received no physical
or speech therapy at FMC Carswell.

On October 23, 2003, Pimentel returned to FCI Danbury with a
recommendation for speech therapy.  The staff physician examined
Pimentel on November 10, 2003, and recommended that Pimentel be
referred for a neurological examination prior to initiating
speech therapy.  As of September 14, 2004, Pimentel had not
received any speech therapy.

III. <u>Discussion</u>

Defendants move to dismiss this action on several grounds:
(1) the court lacks subject matter to entertain this case because
Pimentel failed to exhaust her administrative remedies; (2) any
claim for damages against defendants Bureau of Prisons, FCI
Danbury and defendants Deboo, Rivers, Johnson and Santini in
their official capacities are barred by sovereign immunity; (3)
Pimentel fails to state a <u>Bivens</u> claim against defendants Deboo,
Rivers, Johnson and Santini in their individual capacities
because she fails to allege that any of these defendant committed
a specific unconstitutional act; (4) Defendants Deboo, Rivers,

Johnson and Santini are protected by qualified immunity; (5)
Pimentel fails to state a claim that defendants were deliberately
indifferent to her medical needs in violation of the Eighth
Amendment; (6) defendant Johnson is protected by absolute
immunity because she is a Public Health Services employee; and
(7) defendants Deboo and Rivers cannot be held liable via
respondeat superior.  In response, Pimentel has filed a motion to
quash the motion to dismiss in which she argues that the court
has jurisdiction to hear this case pursuant to 28 U.S.C. § 1331
and a motion to challenge the return of her objection to
defendants' motion for deficiencies in her certificate of
service.

    A.   <u>Pimentel's Motions [docs. ## 26, 27]</u>

As a preliminary matter, the court considers the two motions
filed by Pimentel in response to the motion to dismiss.

    1.   <u>Challenge to Certificate of Service Requirement</u>

When Pimentel first filed her response to the motion to
dismiss, it was returned to her because the certificate of
service failed to list the names and addresses of all persons
served.  She has filed a motion entitled "Motion to Contest
alleged Deficiency with the Motion to Quash Defendant's 'Motion
to Dismiss'" in which she argues that it is not mandatory to
identify opposing counsel in a certificate of service.

7

Rule 5(a) of the Federal Rules of Civil Procedure requires that all papers must be served upon each party.  Section (b) provides that, if a party is represented by an attorney, service may be made on the attorney by mail.  At the time she filed her opposition, defendants were represented by Assistant United States Attorney Alan Marc Soloway.  Thus, Pimentel was required to serve her motion upon AUSA Soloway.

Rule 5(b) of the Local Rules of Civil Procedure for the District of Connecticut provides:

> Proof of service my be made by written acknowledgment of service by the party served, by a certificate of counsel for the party filing the pleading or papers, by a certificate of the *pro se* party filing the pleading or papers, or by affidavit of the person making the service.  Where proof of service is made by certificate or by affidavit, the certificate or affidavit shall list the name and address of each person served.

Thus, the local rule required Pimentel to list AUSA Soloway's name and address in her certificate of service.  The Clerk correctly returned the opposition because it did not comply with the local rule.  Accordingly, Pimentel's motion contesting the actions of the Clerk is denied.

2.  <u>Motion to Quash Motion to Dismiss</u>

Pimentel asks the court to disregard the motion to dismiss as untimely filed.  On April 11, 2005, the court granted

defendants' motion for extension of time, until June 3, 2005, to file an answer or motion to dismiss.  Defendants filed their motion to dismiss on May 20, 2005.  Thus, the motion to dismiss was timely filed.  Pimentel's motion to quash is denied.  The court will consider the other arguments raised in the motion as Pimentel's opposition to the motion to dismiss.

    B.   <u>Exhaustion of Administrative Remedies</u>

Defendants first argue that the court lacks subject matter jurisdiction to entertain this case because Pimentel has not exhausted her administrative remedies.

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a),[2] requires an inmate to exhaust "administrative remedies as are available" before bringing an "action . . . with respect to prison conditions."

The Second Circuit has held the failure to exhaust administrative remedies does not implicate the court's subject matter jurisdiction.  See <u>Richardson v. Goord</u>, 347 F.3d 431, 434 (2d Cir. 2003).  Thus, while failure to exhaust administrative remedies may warrant dismissal, it does not deprive the court of subject matter jurisdiction to entertain the case.  Because

---

[2]Section 1997e(a) provides:  "No action shall be brought with respect to prison conditions under section 1983 of this title or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

defendants only argue that Pimentel's failure to exhaust administrative remedies deprives the court of subject matter jurisdiction, the motion is denied on this ground.

C.   Claims Against Defendants Federal Bureau of Prisons and FCI Danbury and Against All Other Defendants in Official Capacity

Pimentel brings this action pursuant to Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics, 403 U.S. 389 (1971), which is the nonstatutory federal counterpart of a civil rights action pursuant to 42 U.S.C. § 1983.[3]  Under Bivens, Pimentel may seek damages against defendants acting in their individual capacities where their conduct is found to violate constitutional rights.  See Ellis v. Blum, 643 F.2d 68, 84 (2d Cir. 1981).  The only relief available in a Bivens action is an award of damages from the defendant.  See Polanco v. DEA, 158 F.3d 647, 652 (2d Cir. 1998) (noting that Bivens action is, by

_____

[3]On July 29, 2004, the court dismissed Pimentel's original complaint without prejudice to filing an amended complaint.  The court explained to Pimentel that she could pursue a Bivens action or a claim under the Federal Tort Claims Act and described both claims including the required defendants.  Pimentel submitted an amended complaint which did not include the United States as a defendant.  On October 27, 2004, the court reopened the case and ordered service of the amended complaint. (See Doc. #10.) Because the court specifically informed Pimentel that she must include the United States as a defendant if she intended to pursue a claim under the Federal Tort Claims Act and Pimentel did not name the United States as a defendant in her amended complaint, the court concluded that Pimentel did not intend to pursue a claim under the Federal Tort Claims Act.

definition, a claim for money damages).  In the prayer for relief
in the amended complaint, Pimentel states only that she "will
expect the Court to help" her.  (Am. Compl., Doc. #11, at 6.)  To
the extent that Pimentel is requesting any relief other than
damages, the request is dismissed pursuant to 28 U.S.C. §
1915(e)(2)(B)(i) because there is no legal basis for the request.

      A Bivens action will only lie against a federal government
official.  Any such action against the United States or a federal
agency is routinely dismissed.  See Mack v. United States, Fed.
Bureau of Investigation, 814 F.2d 120, 122-23 (2d Cir. 1987).
See F.D.I.C. v. Meyer, 510 U.S. 471, 486 (1994) (holding that
actions for damages against federal agencies are not cognizable
under Bivens).  Thus, defendants' motion to dismiss is granted as
to any claims against the Federal Bureau of Prisons and FCI
Danbury.

      Furthermore, sovereign immunity bars suits against the
United States government and its agencies.  See id. at 475.
Sovereign immunity is jurisdictional in nature.  Thus, without a
waiver of immunity, a district court lacks jurisdiction to
entertain a case against the federal government or its agencies.
See id.  Any waiver of sovereign immunity must be expressed in
unequivocal terms.  See United States Dep't of Energy v. Ohio,
503 U.S. 607, 615 (1992).  The United States has not waived its

11

sovereign immunity for damages arising from constitutional violations.  See Platsky v. C.I.A., 953 F.2d 26, 28 (2d Cir. 1991); Keene Corp. v. United States, 700 F.2d 836, 845 n.13 (2d Cir.) cert. denied, 464 U.S. 864 (1983).  Thus, Pimentel's claims for monetary damages against defendants Federal Bureau of Prisons and FCI Danbury also could be dismissed on sovereign immunity grounds.

Pimentel does not indicate in her amended complaint whether she names defendants Deboo, Rivers, Johnson and Santini in their individual or official capacities.  A claim against a federal employee in her official capacity is, essentially, a suit against the United States.  See, e.g., Meyer, 510 U.S. at 485-86.  The United States has not waived its sovereign immunity for damages claims arising from actions of federal employees in their official capacities and Bivens does not authorize such claims. See Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 510 (2d Cir. 1994) (holding that Bivens claim against federal defendants in their official capacities was barred by sovereign immunity and properly dismissed).  Thus, to the extent the amended complaint may be construed as asserting claims against defendants Deboo, Rivers, Johnson and Santini in their official capacities, these claims are not cognizable in a Bivens action. Defendants' motion to dismiss therefore is granted as to any

claims against defendants Deboo, Rivers, Johnson and Santini in
their official capacities.

    D.    Individual Capacity Claim Against Defendant Johnson

    Defendants contend that all claims against defendant Johnson
must be dismissed because, as an employee of the Public Health
Service, she is entitled to absolute immunity from suit.

    The Public Health Act provides that a claim pursuant to the
Federal Tort Claims Act is the exclusive remedy against a member
of the Public Health Service.  See 42 U.S.C. § 233(a); see also
Brown v. McElroy, 160 F. Supp. 2d 699, 703 (S.D.N.Y. 2001).  The
Second Circuit explained that the purpose of section 233(a) was
to protect commissioned Public Health Service officers or
employees from being subject to suit while performing medical and
similar functions by requiring that such lawsuits be brought
against the United States instead of against the individual
officer or employee.  See Cuoco v. Moritsugu, 222 F.3d 99, 108
(2d Cir. 2000).  Thus, Public Health Service officers and
employees are protected by absolute immunity for claims regarding
performance of their medical duties.

    The court takes judicial notice of the Appointment Order
attached to defendants' memorandum.  The order demonstrates that
defendant Johnson is a commissioned nurse in the Public Health
Service.  Thus, defendant Johnson is entitled to absolute

immunity from suit under <u>Bivens</u>.  The court will not construe the claim against defendant Johnson as brought pursuant to the Federal Tort Claims Act.  As indicated above, before Pimentel filed her amended complaint, the court informed her that if she intended to pursue a claim under the Federal Tort Claims Act, she must include the United States as a defendant.  Pimentel did not name the United States as a defendant in her amended complaint. Defendants' motion to dismiss is granted as to all claims against defendant Johnson.

    E.    <u>Respondeat Superior Claims against Defendants Deboo and Rivers in their Individual Capacities</u>

    Defendants Deboo and Rivers are identified, respectively, as the warden and hospital administrator at FCI Danbury during the time relevant to this action.  Defendants move to dismiss all claims against these two defendants on the ground that they cannot be held liable under a theory of respondeat superior.

    A <u>Bivens</u> actions enables a plaintiff to recover damages against federal defendants acting in their individual capacities where their conduct is found to violate constitutional rights. <u>See</u> <u>Ellis v. Blum</u>, 643 F.2d 68, 84 (2d Cir. 1981).  To establish a <u>Bivens</u> claim, Pimentel must demonstrate each defendant's direct or personal involvement in the incident that gave rise to her constitutional deprivation.  <u>See</u> <u>Barbera v. Smith</u>, 836 F.2d 96, 99 (2d Cir. 1987), <u>cert. denied sub nom.</u> <u>Barbera v. Schlessinger</u>,

14

489 U.S. 1065 (1989).  A supervisory official who has not directly participated in the conduct complained of may be found personally involved if she created, or permitted to continue, the policy or practice pursuant to which the alleged violation occurred or acted recklessly in managing her subordinates who caused the unlawful incident.  See id. (citing Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986).  Liability may not be established on a pure respondeat superior theory.  See Ellis v. Blum, 643 F.2d at 85.

Although Pimentel includes defendant Deboo in the case caption, she does not reference defendant Deboo in her amended complaint.  The only action taken by defendant Deboo was responding to Pimentel's administrative remedy.  Defendant Deboo was the warden of the facility, not a member of the medical staff.  Pimentel has not alleged any facts to demonstrate personal involvement of defendant Deboo in the alleged improper medical treatment.  Defendants' motion to dismiss is granted as to the claims against defendant Deboo in her individual capacity.

In her amended complaint, Pimentel alleges that defendant Rivers told her that she would receive speech therapy.  In addition, in the original complaint, Pimentel alleged that she informed defendant Rivers of her medical problems before the stroke.  She also alleges that defendant Rivers told her that she

15

would be transferred to FMC Carswell for speech therapy and physical therapy.

Pimentel alleges that she had not received any speech therapy as of mid-September 2004. The court cannot conclude, at this time, that Rivers' alleged inaction, both in failing to ensure that Pimentel received medical care before the stroke and in failing to follow up to ensure that she received speech therapy after returning to FCI Danbury, is unrelated to Pimentel's claim of lack of care following her stroke. Thus, Pimentel should be permitted to present evidence on her claim against defendant Rivers. Defendants' motion to dismiss is denied as to defendant Rivers on this ground.

     F.    <u>Deliberate Indifference Claim Defendant Santini in Individual Capacity</u>

Deliberate indifference by prison officials to a prisoner's serious medical need constitutes cruel and unusual punishment in violation of the Eighth Amendment. <u>See</u> <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976). To prevail on such a claim, Pimentel must allege "acts or omissions sufficiently harmful to evidence deliberate indifference" to her serious medical need. <u>Id.</u> at 106. She must show intent to either deny or unreasonably delay access to needed medical care or the wanton infliction of unnecessary pain by prison personnel. <u>See</u> <u>id.</u> at 104-05

Mere negligence will not support a section 1983 claim; "the

Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law." Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003). Thus, "not every lapse in prison medical care will rise to the level of a constitutional violation," id.; rather, the conduct complained of must "shock the conscience" or constitute a "barbarous act." McCloud v. Delaney, 677 F. Supp. 230, 232 (S.D.N.Y. 1988) (citing United States ex rel. Hyde v. McGinnis, 429 F.2d 864 (2d Cir. 1970)); see also Estelle, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); Tomarkin v. Ward, 534 F. Supp. 1224, 1230 (S.D.N.Y. 1982) (holding that treating physician is liable under the Eighth Amendment only if his conduct is "repugnant to the conscience of mankind.").

Inmates do not have a constitutional right to the treatment of their choice. See Dean v. Coughlin, 804 F.2d 207, 215 (2d Cir. 1986). Thus, mere disagreement with prison officials about what constitutes appropriate care does not state a claim cognizable under the Eighth Amendment. See Ross v. Kelly, 784 F. Supp. 35, 44 (W.D.N.Y.), aff'd, 970 F.2d 896 (2d Cir.), cert. denied, 506 U.S. 1040 (1992).

There are both subjective and objective components to the deliberate indifference standard for convicted prisoners. See

17

Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994), cert. denied sub nom. Foote v. Hathaway, 513 U.S. 1154 (1995).  The alleged deprivation must be "sufficiently serious" in objective terms. Wilson v. Seiter, 501 U.S. 294, 298 (1991).  The Second Circuit has identified several factors that are highly relevant to the inquiry into the seriousness of a medical condition:  "'[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'"  Chance v. Armstrong, 143 F.3d 698, 702 (2d. Cir. 1998) (citation omitted).  In addition, where the denial of treatment causes plaintiff to suffer a permanent loss or life-long handicap, the medical need is considered serious.  See Harrison v. Barkley, 219 F.3d 132, 136 (2d Cir. 2000).

Pimentel alleges that she reported to the medical department on at least two occasion exhibiting signs of stroke.  Thus, she has alleged facts which, if proven, clearly would satisfy the objective component of the deliberate indifference test.

In addition to demonstrating a serious medical need to satisfy the objective component of the deliberate indifference standard, a convicted inmate also must present evidence that, subjectively, the charged prison official acted with "a

sufficiently culpable state of mind."  Hathaway, 37 F.3d at 66.
"[A] prison official does not act in a deliberately indifferent
manner unless that official 'knows and disregards an excessive
risk to inmate health or safety; the official must both be aware
of facts from which the inference could be drawn that a
substantial risk of serious harm exists, and he must also draw
the inference.'"  Id. (quoting Farmer v. Brennan, 511 U.S. 825,
837 (1994)).

   Pimentel alleges that when she reported to the medical
department with complaints that she had been suffering severe
head pain, was slurring her words and was unable to grasp with
her right hand, defendant Santini told Pimentel that her only
problem was that she was overweight and directed her to return to
her job assignment.  Defendant Santini gave Pimentel a medical
appointment for four days later.  In her original complaint,
Pimentel alleged that she requested medical care from defendant
Rivers before her stroke, but was ignored.  She also alleges that
defendant Rivers has repeatedly told Pimentel that she would
receive speech therapy, but none was provided for at least
sixteen months after the stroke.

   Assuming these allegations are true, as the court must when
deciding a motion to dismiss, the Court concludes that Pimentel
could state a claim for deliberate indifference to a serious

medical need and should be afforded to present evidence in support of her claim.  Thus, defendants' motion to dismiss on this ground is denied.

C.  <u>Qualified Immunity</u>

Finally, defendants argue that they are protected by qualified immunity.  The doctrine of qualified immunity "shields government officials from liability for damages on account of their performance of discretionary official functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  <u>Rodriguez v. Phillips</u>, 66 F.3d 470, 475 (2d Cir. 1995) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982)).  To determine whether qualified immunity is warranted, the court first must address the question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001).

> [I]f a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established.  This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition.

<u>Id.</u>

At the time of the alleged violations of Pimentel's rights,

the law regarding claims of deliberate indifference to a serious medical need and unconstitutional conditions of confinement was sufficiently established to put defendants on notice that they could be liable for violating the Eighth Amendment if they deliberately ignored evidence of stroke.  Construing the allegations in the light most favorable to Pimentel, the court concludes that, if proven, Pimentel could state a claim for deliberate indifference to a serious medical need.  Accordingly, defendants' motion to dismiss on the ground of qualified immunity is denied.

IV.  Conclusion

Defendants' Motion to Dismiss [**doc. #22**] is **GRANTED** as to the claims against defendants Federal Bureau of Prisons, FCI Danbury, Deboo and Johnson.  Any claim for equitable relief is **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B)(i).  Pimentel's Motion to Quash [**doc. #27**] and Motion to Contest Deficiency [**doc. #26**] are **DENIED**.  The case will proceed as to the claims against defendants Rivers and Santini in their individual capacities.

**SO ORDERED** this 27th day of January, 2006, at New Haven, Connecticut.

/s/_____
Janet Bond Arterton
United States District Judge